IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANGELA ROBINSON,                          :
                                          :
        Plaintiff,                        :
                                          :
vs.                                       :
                                          :        CIVIL ACTION 15-0078-M
CAROLYN W. COLVIN,                        :
Social Security Commissioner,             :
                                          :
        Defendant.                        :


MEMORANDUM OPINION AND ORDER


    In this action under 42 U.S.C. §§ 405(g) and 1381(c)(3),
Plaintiff seeks judicial review of an adverse social security
ruling denying a claim for disability insurance benefits and
Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13-14).
The parties filed written consent and this action was referred
to the undersigned Magistrate Judge to conduct all proceedings
and order judgment in accordance with 28 U.S.C. § 636(c) and
Fed.R.Civ.P. 73 (*see* Doc. 20).  Oral argument was waived in this
action (Doc. 22).  After considering the administrative record
and the memoranda of the parties, it is **ORDERED** that the
decision of the Commissioner be **AFFIRMED** and that this action be
**DISMISSED.**

    This Court is not free to reweigh the evidence or
substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Robinson was forty-seven years old, had completed an eight-grade education (*see* Tr. 271), and had previous work experience as a certified nurse assistant (hereinafter *CNA*), a clean-up worker, and hospital housekeeper (Tr. 80-81). Plaintiff alleges disability due to major depressive disorder, panic disorder, degenerative disc disease, back pain, head injury, dermatitis, Post Traumatic Stress Disorder (hereinafter *PTSD*), mild mental retardation, and right arm pain (Doc. 14).

The Plaintiff applied for disability benefits and SSI on September 2, 2011, asserting an onset date of August 18, 2011 (Tr. 18, 193-202). An Administrative Law Judge (ALJ) denied benefits, determining that although she could not return to her past relevant work, there were specific light work jobs that Robinson could perform (Tr. 18-45). Plaintiff requested review of the hearing decision (Tr. 9-13), but the Appeals Council

denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Robinson alleges that:  (1) The ALJ improperly discounted her testimony; (2) the ALJ did not accord proper weight to the opinions of particular examiners; (3) the ALJ failed to properly assess her PTSD; (4) she meets the requirements of two different Listings; and (5) the Appeals Council did not properly consider newly-submitted evidence (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 17).  The Court's summary of the relevant evidence follows.

On May 3, 2011, Robinson was seen at Anderson Family Medical Center for complaints of back pain, radiating into her legs; she was prescribed medication refills (Tr. 394-95).  On September 7, Plaintiff complained of depression, insomnia, and pain in her right arm and back (Tr. 390-91).  On September 28, Robinson was looking to get shots for her back pain (Tr. 388-89).

On October 20, Plaintiff went to Weems Community Mental Health Center (hereinafter *Weems*), stating that she was suffering panic attacks, depression, nightmares, and severe anxiety from an event seven years earlier wherein her husband attacked her with a sledgehammer; though he had gone to prison, he had since been released and she reported that he tried to run

her off the road with his car in July 2011 (Tr. 426-32).
Robinson had previously received disability, but it was stopped
after she started working (Tr. 386); she reported that she had
last worked in August 2011, but quit after pushing her
supervisor in frustration.  Though Plaintiff had undergone
reconstructive surgery on her arm after her husband's
sledgehammer attack, she reported no physical impairments.
Robinson's thought content was logical and short- and long-term
memory was intact; judgment was thought to be moderately
impaired.  Plaintiff was diagnosed to have Depressive Disorder,
NOS, Anxiety Disorder, NOS, and PTSD.  On November 3, 2011,
Weems reported that Plaintiff was taking Celexa,[1] Klonopin,[2] and
Trazodone;[3] she stated she was unable to concentrate but her
medications helped (Tr. 422-24).  Insight and judgment were
fair.  On January 25, 2012, Robinson reported doing better with
her depression, but was having headaches; Vistaril[4] was
prescribed (Tr. 419-20).

On November 15, 2011, Psychologist Nina E. Tocci reported
that Robinson was unable to wait in her waiting room because

---

[1]*Celexa* is used in treating depression.  **Error! Main Document
Only.***Physician's Desk Reference* 1161-66 (62nd ed. 2008).
[2]*Klonopin* is a class four narcotic used for the treatment of
panic disorder.  **Error! Main Document Only.***Physician's Desk Reference*
2732-33 (62nd ed. 2008).
[3]**Error! Main Document Only.***Trazodone* is used for the treatment of
depression.  *Physician's Desk Reference* 518 (52nd ed. 1998).
[4]*Vistaril* is used to treat anxiety and tension and may be used to
control nausea and vomiting.  http://www.drugs.com/vistaril.html

there was a man sitting there and she was scared (Tr. 289-93).
Affect was appropriate and normal; she demonstrated forced
attention and concentration.  Plaintiff had a poor fund of
information and comprehension; she had logical thought
organization and her thought content was appropriate.  Robinson
had difficulty remaining focused and used breathing techniques
and self-talk to remain calm.  She had good insight and fair
social judgment; Tocci thought she was functioning within the
borderline range of intellectual ability.  The Psychologist's
impression was recurrent, moderate Major Depressive Disorder and
Panic Disorder with a poor prognosis; she indicated that she
would have difficulty learning, performing, and completing job
tasks.  Tocci indicated Robinson's GAF was 55.[5]

On November 21, 2011, Dr. Richard S. Abney examined
Plaintiff who was breathing in a paper bag during most of the
exam; accompanying family members said she had a history of
headaches, a residual of her husband's attack, but had no other
physical problems (Tr. 299-304; *cf.* Tr. 324-27).  Straight leg
raise was limited to 60°; Robinson mentioned low back—but no
radicular—pain.  She had normal range of motion (hereinafter
*ROM*) in her upper and lower extremities and had normal gait.

---

[5]**Error! Main Document Only.**"A GAF score between 51-60 indicates
"moderate symptoms (*e.g.,* flat affect and circumstantial speech,
occasional panic attacks) or moderate difficulty in social,
occupational or school functioning (*e.g.,* few friends, conflicts with
peers or co-workers)."  American Psychiatric Association, *Diagnostic
and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994).

Dr. Abney's impression was depression, panic attacks, hyperventilation, and traumatic injury (with no corresponding physical findings) by history.

On November 29, 2011, Linda Duke, a non-examining Psychologist reviewing Robinson's file as of that time, completed a Psychiatric Review Technique Form, indicating that Plaintiff suffered from borderline intellectual functioning and had a recurrent, moderate Major Depressive Disorder and a panic disorder (Tr. 306-19). Duke suggested that Plaintiff had mild restrictions of daily living activities, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and had had no episodes of decompensation of extended duration. On that same day, Duke completed a mental residual functional capacity assessment, indicating that Plaintiff would be moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (Tr. 320-23). Duke found no marked limitations.

On December 15, Robinson went to the Anderson Regional Medical Center Emergency Room following a motor vehicle

6

accident, causing head, neck, and lower back pain rated at two on a ten-point scale (Tr. 332-51).  An x-ray of the lumbosacral spine disclosed no fracture or dislocation though there was anterior spurring at the L3-4 level with modest posterior spurring at the L3-4 level and disc space narrowing at the L5-S1 level; a chest x-ray was unremarkable.  A brain CT demonstrated reversal of normal cervical curvature with mild posterior spurring at the C4-5 level.

On February 14, 2012, Dr. Katherine Hensleigh examined Robinson for a rash on her face and under her stomach (Tr. 435-39).  Plaintiff had normal ROM, muscle strength, and stability in all extremities with no pain; she was oriented in four spheres, had normal insight and exhibited normal judgment.  The records showed that Robinson had prescriptions for Lortab[6] and Flexeril.[7]  On May 9, Dr. Hensleigh examined Plaintiff for a mole on the side of her neck and eczema on the soles of her feet; the Doctor noted moderate abdominal tenderness (Tr. 513-15).  On May 30, Robinson was experiencing a cough, sinus pressure, and sore throat; though Robinson no longer had abdominal tenderness, Hensleigh noted tenderness in the lumbar spine with mild pain on

---

[6]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[7]**Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

motion (Tr. 510-12).  On June 5, 2012, Plaintiff complained of lower back pain, radiating into both calves; she had moderate abdominal tenderness and moderate pain with motion in the lumbar spine (Tr. 507-09).  The Doctor gave her an injection of Demerol,[8] Phenergan,[9] and Decadron.[10]  On June 15, Robinson was having problems with hypertension; she had normal ROM, muscle strength, and stability in all extremities with no pain (Tr. 504-06).  Hensleigh noted insomnia and generalized anxiety disorder.

On August 15, Plaintiff went to Alabama Mental Health Center (hereinafter *AMHC*), complaining that she was uncomfortable being out in public (Tr. 470-73).  On October 24, her Doctor noted that Robinson was oriented in four spheres with her memory intact and reasoning good; thought processes were logical (Tr. 477-78).  Her mood was anxious while judgment and impulse control were fair; Plaintiff was diagnosed to have PTSD and recurrent major depression.  Over a six-month period beginning in August 2012, she attended five individual and family counseling; Robinson's sleep and appetite improved (Tr.

---

[8]**Error! Main Document Only.***Demerol* is a narcotic analgesic used for the relief of moderate to severe pain.  *Physician's Desk Reference* 2570-72 (52nd ed. 1998).

[9]**Error! Main Document Only.***Phenergan* is used as a sedative, sleep aid, or to treat nausea, vomiting, or pain. http://www.drugs.com/phenergan.html

[10]**Error! Main Document Only.***Decadron* is a corticosteroid used for, among other things, the treatment of rheumatic disorders.  *Physician's Desk Reference* 1635-38 (52nd ed. 1998).

465-69).

On September 12, 2012, Plaintiff saw Dr. Hensleigh who noted tenderness, and mild pain on motion, in the lumbar spine for which she was given an injection including Toradol[11] (Tr. 500-03).  On October 5, Robinson had cold symptoms and was feeling fatigued and malaise and experiencing back and joint pain; Dr. Hensleigh noted no abdominal tenderness though there was tenderness and mild pain in the lumbar spine (Tr. 496-99).

On November 12, Plaintiff went to the Choctaw General Hospital Emergency Department for complaints of back pain; it was noted that she had ROM intact for all extremities with no muscle weakness (Tr. 446-51).  Robinson received a Toradol injection.  On December 5, Plaintiff returned to the Emergency Department because of back pain radiating into the left thigh; she had full ROM with no muscle weakness (Tr. 441-45).  She received an injection.

On January 8, 2013, Dr. Hensleigh examined Plaintiff for back pain; the Doctor characterized the pain as moderate and gave her an injection (Tr. 492-95).  On January 15, an MRI of the lumbar spine demonstrated degenerative changes of the L3-4 and L-S1 levels (Tr. 521).  More specifically, there was "disc desiccation noted from L3-L4 through the L5-S1 levels.  Mild to

---

[11]*Toradol* is prescribed for short-term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

space narrowing noted at these levels and greatest at the L3-L4 level" (Tr. 521).  At L5-S1, there was a disc bulge resulting in mild effacement of the ventral thecal sac but no significant effacement of the nerve root (Tr. 521).  On January 29, 2013, Robinson's back still hurt, so she received another injection (Tr. 488-91).  On February 6, Plaintiff saw her doctor for cold symptoms; her back pain was only mild, but she received another injection (Tr. 484-87).

On February 5, Robinson reported to AMHC that she was having visual hallucinations but stated she was resting better with Zoloft[12] and Trazodone; she complained of tension and pain in her back (Tr. 474-76).  Her mood was irritable and depressed; her intellect was thought to be average.  Impulse control and judgment were good.  Her Zoloft prescription was increased.

On February 18, Dr. Lenard Rutkowski examined Robinson for complaints of low back pain radiating into the left thigh and leg (Tr. 526-28).  On exam, the Doctor noted sacroiliac joint tenderness and that straight leg raising was abnormal bilaterally; she also had a pulling sensation bilaterally at ninety degrees.  Plaintiff had full strength in all extremities. She was referred to physical therapy and underwent three sessions over a two-week period (Tr. 453-62).

---

[12]**Error! Main Document Only.***Zoloft* is "indicated for the treatment of depression."  *Physician's Desk Reference* 2229-34 (52nd ed. 1998).

On March 6, Psychologist Donald W. Blanton examined
Robinson who looked sad and scared; thoughts were logical and
associations were intact with no confusion (Tr. 479-82).
Plaintiff complained of anxiety and was restless; she was
depressed and cried often.  The Psychologist indicated she
appeared to have slight psychomotor retardation; insight was
limited but her judgment was good for work and financial
decisions.  On the Wechsler Adult Intelligence Scale, Fourth
Edition, Robinson obtained a Full Scale IQ score of 65, placing
her in the mild range of mental retardation.  On the Wide Range
Achievement Test, she scored a third grade level of reading,
spelling, and math.  The Beck Depression Inventory II
demonstrated that she was seriously depressed.  It was Blanton's
opinion that the test results were valid; his diagnostic
impression was that she had PTSD, pain disorder with depression,
mild mental retardation, and orthopedic problems.  The
Psychologist indicated his opinion that Robinson had marked
limitations in her ability to understand, remember, carry out,
and use judgment in detailed or complex instructions, respond to
customary work pressures, and maintain attention and
concentration and pace for at least two hours.  Blanton thought
this was a lifelong condition; he further indicated that she had
demonstrated deficits in adaptive functioning, before she was
twenty-two years of age, in communication, social interpersonal

11

skills, work, health safety, and functional academic skills.

On June 3, 2013, the ALJ entered his decision, finding that Plaintiff was capable of performing light, unskilled jobs and was, therefore, not disabled (Tr. 18-45).  This concludes the Court's summary of the evidence.

In bringing this action, Plaintiff first claims that the ALJ did not properly consider her testimony of pain and limitation (Doc. 13, pp. 10-14).  The standard by which Robinson's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275

(11th Cir. 1986).  Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2015).

In his decision, the ALJ discounted Robinson's statements for multiple reasons.  The first was that she testified about medical treatment that she had received that indicated possible future surgery; the ALJ noted that the evidence was not in the record (Tr. 35).  Though Plaintiff takes offense at the ALJ's finding (Doc. 13, p. 10), the fact remains that the records were not made available to the ALJ before his decision date of June 3, 2013, even though the examination took place on May 8 (*see* Tr. 538-39).  Social security regulations state that a claimant is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3) (2015).

Next, the ALJ found that Robinson's testimony of lost grip

in her right hand and use of the right arm, generally, was unsupported by the medical records as she had returned to medium-level work following medical treatment for the right arm injuries inflicted on her by her ex-spouse (Tr. 36). Plaintiff does not challenge this credibility finding (Doc. 13, pp. 10-14).

The ALJ discounted Robinson's headaches as unsupported by the evidence as her complaints were infrequent (Tr. 36). Plaintiff does not challenge this finding (Doc. 13, pp. 10-14).

The ALJ discounted Robinson's pain as less extensive than alleged, noting that the objective medical evidence did not support her assertions (Tr. 36-37). Though Plaintiff, in her brief, summarizes subjective complaints made to various doctors during her treatment history (Doc. 13, p. 13), she fails to point to objective evidence supporting those complaints.

The ALJ also found inconsistency in Robinson's reports of when she let her driver's license expire (Tr. 37). Though Robinson argues that this is not important as the ALJ failed to question her about it at the evidentiary hearing (Doc. 13, p. 12), the inconsistency remains unexplained and a reason for the ALJ to discount her testimony.

The ALJ also found Plaintiff not credible in testifying that she had had no vocational training, though having previously reported that she had been trained as a CNA (Tr. 39;

*cf.* Tr. 71, 225).[13]

The ALJ discussed Robinson's stress, depression, and anxiety, caused in large part by her former husband's attack (Tr. 37).  He then noted that the "record contains different accounts of when the sledgehammer attack occurred and the nature of the attack" (Tr. 37).  In response, Plaintiff has summarized her reports to various treating sources to show the consistency of her testimony (Doc. 13, pp. 10-12).  The Court carefully checked those reports and concludes that the ALJ's timeline of events appears to be out of sync with the events as they factually occurred.  Nevertheless, the ALJ's error is harmless when considered alongside Robinson's failure to address—much less provide evidence to rebut—the ALJ's conclusions that she had not lost the use of her right arm, that she suffered headaches only irregularly, and that there is no objective evidence to support her claims of pain and limitation.  The Court finds substantial support for the ALJ's conclusion that Robinson was not a credible source of information.

Plaintiff also claims that the ALJ did not accord proper weight to the opinions of particular examiners.  Specifically,

---

[13]The Court rejects Plaintiff's argument that because the ALJ did not question her about her training or work as a CNA he cannot use it to discredit her (*see* Doc. 13, p. 24).  The Court, in reviewing the more than five hundred pages of this transcript, came across several instances wherein Robinson indicated that she had been a CNA (Tr. 225, 422, 479).

Robinson points to the opinions of Psychologist Tocci and Blanton (Doc. 13, pp. 14-19).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[14] *see also* 20 C.F.R. § 404.1527 (2015).

In his decision, the ALJ gave little weight to Tocci's assessment as unsupported by the other evidence of record and because the Psychologist "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant" (Tr. 41).  He also gave little weight to Blanton's assessment for the same reasons (Tr. 41-42).

The Court notes that the two Psychologists' opinions were inconsistent with findings in their own reports.  Specifically, Tocci found Plaintiff to have appropriate thought content and a logical thought organization; she had good insight (Tr. 291).  Blanton found that Robinson's thoughts and conversation were logical with associations intact; she was oriented in four spheres and had good judgment for work and financial decisions (Tr. 479-80).

---

[14]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

The Court further notes that Tocci's and Blanton's opinions find no support in the records of the Weems Community Mental Health Center (Tr. 419-32) or the Alabama Mental Health Center (Tr. 465-78).  Specifically, at Weems, on January 25, 2012, Robinson's depression was better and her only problem was her headaches; her thought processes were organized (Tr. 419).  In the prior examination, her intelligence was rated as average (Tr. 423).  Two different doctors at the AMHC indicated that Plaintiff was of average intelligence, oriented in four spheres, with good reasoning, good insight, appropriate affect, intact memory, and logical thought processes (Tr. 475, 477-78).  Though the Centers reported Robinson's problems as she reported them, neither one indicated that she was unable to function in the workplace.

In bringing this claim, Robinson takes exception to the ALJ's reliance on non-examining Psychologist Duke in reaching his decision (Doc. 13, pp. 16-19; *cf*. Tr. 41, 306-19).  The Court notes that a non-examining physician's opinions can be given greater evidentiary weight than the opinions of an examining source so long as they are well-supported by the evidence of record.  20 C.F.R. § 404.1527(c and e); 20 C.F.R. § 416.927(c and e).  While it is true that Psychologist Duke never examined Plaintiff and relied only on the records in existence at that time, her opinions more closely resembled the opinions

expressed by her treating sources (Weems and AMHC) than those of one-time examiners Tocci and Blanton.  For all of these reasons, the Court finds substantial support for the ALJ's determinations in rejecting the opinions of the two Psychologists.

Robinson next claims that the ALJ failed to properly assess her PTSD (Doc. 13, pp. 19-22).  More particularly, Plaintiff argues that the impairment should have been found to be a severe impairment.  In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf.* 20 C.F.R. § 404.1521(a) (2004).[15]  The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  It is also noted that, under SSR 96-3p, "evidence about the functionally

---

[15]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

In his decision, the ALJ listed specific impairments that he found severe; though depression and panic disorder were listed, PTSD was not (Tr. 20-21).  The ALJ discussed Plaintiff's mental impairments, finding them severe, but not disabling (Tr. 37-40).  The ALJ also specifically determined that her mental impairments did not satisfy Listing 12.06 for Anxiety Related Disorders.[16]  The Court notes that the ALJ extensively discussed the events (her husband's attack and threat of a second attack) that led to the PTSD diagnosis in reaching his conclusion as Plaintiff's telling and re-telling of the incidents pervades the record.  Nevertheless, Robinson has not shown how her PTSD diminished her ability to work to any greater extent than her depression, panic disorder, and anxiety already did (Doc. 13, pp. 19-22).  Though the ALJ should have made a specific determination as to the severity of her PTSD, his failure to do so was, at most, harmless error.

Plaintiff claims that the ALJ improperly determined that she did not meet the requirements of two different Listings; the first is Listing 12.04 for Affective Disorders and the other is

---

[16]Under the Social Security Administration's *Program Operations Manual System* DI 34001.032D.11, PTSD is an anxiety disorder.  *See* https://secure.ssa.gov/poms.nsf/lnx/0434001032#di34001032_mentalanxiety

Listing 12.05C for Intellectual Disability (Tr. 13, pp. 22-28). The Court will address these issues separately.

Robinson first asserts that she meets the requirements of Listing 12.04 for Affective Disorders. Plaintiff asserts that she meets the following requirements:

> A claimant meets Listing 12.04 when the evidence shows a depressive syndrome characterized by at least four of the following: anhedonia or pervasive loss of interest in almost all activities; or appetite disturbance with changes in weight; or sleep disturbance; or psychomotor agitation or retardation; or decreased energy; or feelings of guilt or worthlessness; or difficulty concentrating or thinking; or thoughts of suicide; or hallucinations, delusions or paranoid thinking. The syndrome must result in at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social function; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. 404, Subpart P, Appendix 1, Listing 12.04.

(Doc. 13, p. 22). After setting out the requirements she asserts she meets, Robinson listed all of the instances in the medical record where she complains of the various symptoms. She does not, however, point to records where medical professionals indicate their belief that she suffers these symptoms and find her unable to work. The ALJ found Plaintiff's complaints unsupported by the medical evidence, a finding substantially supported by the evidence. Robinson's complaints garner no more

support in this claim than previously.  As such, Plaintiff has failed to demonstrate that she meets the requirements of subsection A of the Listing, obviating the need for the Court to discuss the subsection B requirements.[17]  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04 (2015) ("The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied").  Robinson's claim that she meets the requirements of Listing 12.04 is without merit.

Plaintiff also asserts that she meets the requirements of Listing 12.05C (Doc. 13, pp. 23-28).  The introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2015).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2015).

---

[17]The Court notes that Plaintiff's argument focuses on subsections A and B of Listing 12.04, apparently conceding that she does not meet the requirements of subsection C (Doc. 13, pp. 22-23).

     The Court notes that although the regulations require that
Plaintiff demonstrate she suffered "deficits in adaptive
behavior" before she turned twenty-two, 20 C.F.R. Part 404,
Subpart P, Appendix 1, Listing 12.05 (2015), the Eleventh
Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265,
1266 (11th Cir. 2001), has held "that there is a presumption that
mental retardation is a condition that remains constant
throughout life."  The *Hodges* Court further held "that a
claimant need not present evidence that she manifested deficits
in adaptive functioning prior to the age of twenty-two, when she
presented evidence of low IQ test results after the age of
twenty-two."  *Hodges*, 276 F.3d at 1266.  However, the
presumption is rebuttable.  *Hodges*, 276 F.3d at 1267.

     Plaintiff points to the WAIS Full Scale IQ score of 65, in
the testing conducted by Psychologist Blanton, as the basis for
this claim (Doc. 13, pp. 23-24).  She also points to Blanton's
finding that she had "'demonstrated deficits in adaptive
functioning due to her mental retardation manifested prior to
age 22' in communication, social interpersonal skills, work,
health safety, and functional academic skills" (*id.*) (*quoting*
Tr. 481).

     The ALJ rejected Blanton's finding that Robinson met
Listing 12.05C because two of her physicians at West Alabama
Mental Health found her to be of average intelligence with no

                                   22

psychomotor retardation (Tr. 39).  The ALJ further rejected the mental retardation diagnosis because treatment notes from WAMH indicated no cognitive deficits.  Finally, the ALJ rebutted Blanton's assertion that Robinson had demonstrated deficits in adaptive functioning before she turned twenty-two in noting that Plaintiff had reported working as a CNA, characterized as semi-skilled work (Tr. 39, 80).

The Court finds that the ALJ's conclusion is supported by substantial evidence.  The Court accords no weight to Robinson's suggestion that because the two doctors at WAMH were only psychiatrists—instead of psychologists—they were guessing at her intelligence level (Doc. 13, p. 24).  The Court finds that the ALJ properly considered all of the evidence of record and correctly determined that Plaintiff had not demonstrated that she satisfied Listing 12.05C requirements.

Finally, Robinson asserts that the Appeals Council did not properly consider newly-submitted evidence.  This claim breaks down to two different components:  (1) The evidence included a diagnosis of disc herniation; and (2) the evidence was rejected solely on the basis of the treatment dates (Doc. 13, pp. 28-31).

The Court notes that a disability claimant can present new evidence at any stage of the administrative proceedings.  20 C.F.R. §§ 404.900(b) and 416.1400(b) (2015); *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1261 (11th Cir.

2007).  If the evidence is first presented to the Appeals
Council, the Council considers it only if it relates "to the
period on or before the date of the [ALJ's] hearing decision."
20 C.F.R. §§ 404.970(b) and 416.1470(b).  If it is relevant to
the period under consideration, an examination is then made as
to whether the claimant has "establish[ed] that:  (1) there is
new, noncumulative evidence; (2) the evidence is 'material,'
that is, relevant and probative so that there is a reasonable
possibility that it would change the administrative result, and
(3) there is good cause for the failure to submit the evidence
at the administrative level." *Caulder v. Bowen*, 791 F.2d 872,
877 (11th Cir. 1986).  If the Appeals Council determines that
the evidence provides no basis for changing the ALJ's decision,
no further explanation is required. *Mitchell v. Commissioner*,
771 F.3d 780, 783-85 (11th Cir. 2014).  The Court will now review
the submitted evidence and the Appeals Council's consideration
of it.

Robinson first claims that the Appeals Council erred in
reviewing specific new evidence that included a diagnosis of
disc herniation (Doc. 13, pp. 28-30).  The evidence shows that
on May 8, 2013, approximately one month before the ALJ's
determination was entered, Dr. Austin W. Gleason, at the Spine
Institute of Louisiana, examined Plaintiff who was in no acute
distress; she complained of lumbosacral pain with some radiation

24

into the buttocks and down into her left leg to the knee and,
sometimes, into the right knee (Tr. 538-39).  Robinson had
decreased ROM—about thirty-five percent of normal with slight
discomfort with extreme flexion and extension; lateral flexion
was normal.  She had no neurological deficits.  Gleason reviewed
an MRI of the lumbar spine, performed on January 15, 2013 (Tr.
521), and noted mild degenerative changes throughout.  "At L5-
S1, there [was] a fairly large extruded fragment of disk
primarily on the left side but some degree on the right.  There
also [was] a degenerative disk at L3-L4 and also L5-S1" (Tr.
538).  The Doctor's impression was herniated and extruded disk
fragment at L5-S1 and degenerative disk at L3-L4.  Gleason
indicated that surgery could probably be avoided; he prescribed
Lortab and a Medrol Dosepak.

The Court finds substantial support for the Appeals
Council's decision that this evidence provided no basis for
changing the ALJ's decision (see Tr. 2).  The MRI was in the
record before the ALJ.  Though Dr. Gleason provided a new
diagnosis, he indicated surgery was unnecessary as of yet, so he
prescribed medications.  The ALJ had already found Robinson to
have the severe impairment of degenerative disc disease of the
lumbar spine and accompanying back pain.  The new diagnosis,
with no accompanying new treatment regimen, provided no reason
to refer the action back to the ALJ as no new limitations were

25

suggested in the evidence.

Plaintiff also asserts that the Appeals Council erred in rejecting newly-submitted evidence solely on the basis of the treatment dates (Doc. 13, pp. 30-31).  The Appeals Council's rejection stated as follows:

> We also looked at the medical records from West Alabama Mental Health Center from June 19, 2013 to May 25, 2014, from Choctaw General Hospital from October 26, 2013 to March 29, 2014, from Dr. David Malloy from January 1, 2014 and from the Spine Institute of Louisiana from October 16, 2013 to November 4, 2013.  The administrative Law Judge decided your case through June 3, 2013.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before June 3, 2013.

(Tr. 2).  The Appeals Council indicates that the evidence appears in Exhibits 20F through 24F (Tr. 5; *cf.* Tr. 529-44).

Plaintiff admits that "the records are dated after the date of the ALJ's decision" (Doc. 13, p. 31).  This would normally be the end of this enquiry because, as noted earlier, the Council considers new evidence only if it relates "to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. §§ 404.970(b) and 416.1470(b).

However, the Court has reviewed the evidence in question and notes that it all appears to pre-date the ALJ's decision (Tr. 2; *cf.* Tr. Index 3, 529-44).  As such, the Appeals

Council's rejection of it as untimely is error.

Nevertheless, the Court has reviewed the evidence and finds that it is not new, noncumulative evidence. More to the point, most of it already appears in the record before the ALJ. The Court also finds that the evidence is not material. More specifically, the Court does not find a reasonable possibility that it would change the administrative result. For these reasons, the Court finds that although the Appeals Council committed error in rejecting the evidence as untimely, it is only harmless error.

Robinson has raised five different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 5th day of November, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE